THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CRIMINAL CASE NO. 1:00-cr-00069-MR-3

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | O R D E R |
| ) | |
| GEORGE McBRIDE, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the Defendant's Motion for Sentence Reduction under 18 U.S.C. § 3582(c)(1)(A) (Compassionate Release) [Doc. 218] and the Government's Motion to Seal [Doc. 225].

**I.    BACKGROUND**

During 1999 and 2000, the Defendant George McBride and his co-defendant Amos Scott, both of whom lived in California, delivered multiple-kilogram quantities of cocaine to Robert Rutherford in Asheville, North Carolina, receiving between $22,000 and $26,000 per kilogram. [Doc. 104-1 at ¶¶ 7-9]. McBride and Scott traveled to Asheville, carrying the cocaine in plastic bags wrapped in black tape and secured to the top of gas tanks in rental cars, often transporting between two and three kilograms of cocaine

at a time. [Id. at ¶ 7]. At least 70 kilograms of cocaine were reasonably foreseeable to McBride. [Id. at ¶ 9].

A federal grand jury indicted McBride and charged him with conspiracy to possess with intent to distribute at least 5 kilograms of cocaine, 21 U.S.C. § 846. [Doc. 3: Indictment]. The Government filed an Information under 21 U.S.C. § 851, notifying McBride and this Court that it intended to seek an enhanced penalty because McBride had previously been convicted of a felony drug offense in California. [Doc. 5: § 851 Notice]. A jury convicted McBride of the conspiracy offense, finding that the offense involved at least 5 kilograms of cocaine. [Doc. 79: Jury Verdict].

This Court's probation office submitted a presentence report in preparation for sentencing. Based on McBride's prior convictions for involuntary manslaughter and discharge of a firearm with gross negligence, the probation officer determined that McBride was a career offender. [Doc. 104-1: PSR at ¶ 23]. The adjusted offense level of 37 resulting from McBride's classification as a career offender was only one level higher than the offense level resulting from application of the drug-trafficking guideline and the Court's determination that McBride was responsible for at least 70 kilograms of cocaine. [Id. at ¶¶ 22-23]. The probation officer found that the Sentencing Guidelines called for a sentence of between 360 months and life

in prison. [Id. at ¶ 47]. McBride faced a statutory mandatory minimum sentence of twenty years and a maximum of life. [Id. at ¶ 46]. In August of 2001, this Court sentenced McBride to life in prison. [Doc. 112: Judgment at 2].

McBride is currently incarcerated at USP Lompoc.[1] While in the Bureau of Prisons (BOP), McBride has committed three disciplinary infractions and has participated in 31 educational programs or work assignments. [Doc. 223-1]. McBride has approximately 256 months of credited time. [See id.].

In February of 2021, McBride submitted a request for compassionate release to the warden of his BOP facility, and that request was denied two weeks later. [Docs. 223-2, 223-3]. McBride now asks this Court to grant him compassionate release, arguing that he would receive a lower sentence if sentenced today under the First Step Act, and because of medical conditions that McBride asserts make him more vulnerable to serious health consequences should he contract COVID-19. [Doc. 218 at 5-6]. The Court directed the Government to respond to the Defendant's motion. [Text-Only Order dated July 15, 2021]. The Government filed its Response on August

---

[1] See https://www.bop.gov/inmateloc/ (last accessed Oct. 14, 2021).

17, 2021. [Doc. 223]. McBride filed his Reply on September 21, 2021. [Doc. 228].

## II. DISCUSSION

### A. Motion for Compassionate Release

Section 3582(c)(1)(A), as amended by The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018), permits a defendant to seek a modification of his sentence for "extraordinary and compelling reasons," if the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Here, the Government does not dispute that McBride has sufficiently exhausted his administrative remedies with BOP by requesting compassionate release from the Warden. Accordingly, the Court will proceed to address the merits of the Defendant's compassionate release request.

As is relevant here, the Court may reduce a defendant's sentence under 18 U.S.C. § 3582(c)(1)(A)(i) for "extraordinary and compelling reasons if "such reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Court must

also consider the factors set forth in 18 U.S.C. § 3553(a), to the extent that such factors are applicable. Id.

Section 1B1.13 of the United States Sentencing Guidelines sets forth the Sentencing Commission's policy statement applicable to compassionate release reductions. See U.S.S.G. § 1B1.13. Specifically, the commentary to Sentencing Guidelines § 1B1.13 provides specific and limited grounds for release under § 3582(c)(1)(A). These include (1) a terminal illness; or (2) a serious physical or medical condition, a serious functional or cognitive impairment, or deteriorating physical or mental health because of the aging process that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A). A defendant's age may also warrant compassionate release, if (1) the defendant is at least 65 years old, (2) is experiencing a serious deterioration in physical or mental health because of the aging process, and (3) has served at least 10 years or 75% of his term of imprisonment, whichever is less. Id., § 1B1.13 cmt. n.1(B). Congress has made clear that rehabilitation of the defendant alone "shall not be considered an extraordinary and compelling reason" for a modification. 28 U.S.C. § 994(t).

The policy statement set forth in § 1B1.13, however, is not binding on this Court. Section 1B1.13 was adopted before the First Step Act, and the Sentencing Commission has not updated the policy statement to account for the fact that defendants are now permitted to file their own motions for compassionate release. In light of these circumstances, the Fourth Circuit Court of Appeals has held that § 1B1.13 is no longer an "applicable" policy statement that constrains the discretion of the district courts in finding that "extraordinary and compelling reasons" exists to warrant a reduction in sentence. See United States v. McCoy, 981 F.3d 271, 282 (4th Cir. 2020) ("By its plain terms, . . . § 1B1.13 does not apply to defendant-filed motions under § 3582(c)(1)(A)"). Thus, this Court is "empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise." Id. at 284 (quoting United States v. Zullo, 976 F.3d 228, 230 (2d Cir. 2020)). Nevertheless, as the Court in McCoy recognized, this policy statement "remains helpful guidance even when motions are filed by defendants." Id. at 282 n.7. The Defendant bears the burden of establishing that he is eligible for a sentence reduction. United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016); United States v. Green, 764 F.3d 1352, 1356 (11th Cir. 2014).

In support of his request for compassionate release, McBride first asserts that he has serious physical and medical conditions—including obesity, severe hypertension and high blood pressure, deteriorating vision, gout, chronic lung disease, and "[c]onstant annual acut[e] upper respiratory infecti[ons]"—that substantially diminish his ability to provide self-care and from which he is not expected to recover. [Doc. 218 at 4]. Although McBride's medical records reflect that he has high blood pressure, joint pain, and an eye disease that results in loss of vision and may require surgical intervention, his medical records also reflect that he has not been diagnosed with hypertension or chronic lung or respiratory disease. [See Doc. 223-4]. While McBride asserts that these conditions substantially diminish his ability to provide self-care while imprisoned, the medical records do not support this contention.

At the time of the filing of his compassionate release motion, McBride was housed at USP Atlanta, which he asserted in his motion is "a hotbed of COVID-19 infection." [Doc. 218 at 5]. McBride, however, has since been transferred to USP Lompoc, where no inmates have COVID-19, and only three staff members currently have the virus.[2] The Court further notes that

---

[2] See https://www.bop.gov/coronavirus/index.jsp (last accessed Oct. 14, 2021).

7

Case 1:00-cr-00069-MR   Document 230   Filed 10/28/21   Page 7 of 16

the BOP has taken significant measures to protect the health of its inmates. See United States v. Johnson, No. 1:19-cr-00020-MR-WCM, 2020 WL 7646809, at *2-3 (W.D.N.C. Dec. 23, 2020) (Reidinger, C.J.). In addition to these measures, BOP has begun the process of vaccinating inmates, which will offer inmates further protection from the virus.[3] Taken together, these measures are designed to mitigate sharply the risks of COVID-19 transmission in BOP institutions while allowing BOP to continue to fulfill its mandate of incarcerating those persons sentenced or detained based on judicial orders. Given BOP's efforts, the fact that the Defendant faces a potential risk of contracting the virus while incarcerated, without more, is not sufficient to justify the relief he requests. United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread.").

McBride further asserts that compassionate release is warranted because he would receive a significantly lower sentence if he were

---

[3] McBride was twice offered, but twice refused, the COVID-19 vaccine. [Doc. 223-5].

sentenced today. Specifically, he contends that Section 404 of the First Step Act of 2018 lowered the applicable Guidelines range for his offense. He further contends that, under the current state of the law, he would no longer qualify as a career offender. Both arguments, however, are meritless.

Section 404 of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, gave retroactive effect to the changes made by Sections 2 and 3 of the Fair Sentencing Act of 2010, Pub. L. No. 111-220. Section 2 of the Fair Sentencing Act increased the quantity of cocaine base required to trigger the enhanced penalties of Section 841. Here, however, McBride was convicted of conspiracy to possess with intent to distribute cocaine *powder*, not cocaine base. As such, the provisions of Section 404 of the First Step Act are simply not applicable to him.

Even if McBride were correct that, if he were sentenced today for the offense of conspiracy to possess with intent to distribute cocaine, he would not be designated a career offender in light of United States v. Norman, 935 F.3d 232, 237-39 (4th Cir. 2019) (holding that the offense of conspiracy to possess with intent to distribute a controlled substance is not a "controlled

substance offense" within in the meaning of the career offender guideline),[4] this fact alone would not automatically entitle McBride to a compassionate release. In McCoy, the Fourth Circuit held only that the district courts had discretion to consider "the severity of the defendants' ... sentences and the extent of the disparity between the defendants' sentences and those provided for under [current law]," when deciding a motion for compassionate release. 981 F.3d at 286. "Nothing in McCoy, however, requires the court to

---

[4] Section 4B1.2 of the Guidelines defines a controlled substance offense as "an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 4B1.2(b). Application Note 1 of the commentary clarifies that "controlled substance offenses" "include the offenses of aiding and abetting, *conspiring*, and attempting to commit such offenses." U.S.S.G. § 4B1.2 cmt. n.1 (emphasis added). Notwithstanding the wording of this provision, the Court in Norman held that a drug conspiracy conviction under § 846 is not a "controlled substance offense." This interpretation of § 4B1.2 is interesting in light of the fact that this section expressly states that "the term 'controlled substance offense' means an offense under federal . . . law . . . that prohibits . . . the possession of a controlled substance . . . with the intent to . . . distribute . . ." and "include[s] the offense[ ] of . . . conspiring . . . to commit such offense[]" USSG § 4B1.2 and n.1. That defines only one crime: a violation of § 846. Yet the Court in Norman proceeded through a complex categorical analysis to hold that this category of one is actually a category of none. For this reason, other courts of appeal have held that the plain text of U.S.S.G. § 4B1.2, as further defined by Application Note 1, includes § 846 drug conspiracies. See United States v. Lewis, 963 F.3d 16, 24 (1st Cir. 2020), cert. denied, No. 20-7387, 2021 WL 2519339 (U.S. June 21, 2021); United States v. Tabb, 949 F.3d 81, 87 (2d Cir. 2020), cert. denied, No. 20-579, 2021 WL 2519097 (U.S. June 21, 2021). As such, the Fourth Circuit's holding in Norman would appear to represent a departure from ordinary textualism. It is also a clear departure from the Circuit's own precedent. See Norman, 935 F.3d at 242-43 (King, J. concurring in part and dissenting in part) (noting that in United States v. Kennedy, 32 F.3d 876 (4th Cir. 1994), the Fourth Circuit held that § 846 is a controlled substance offense, a holding which the Norman majority referred to merely as an "assumption"). Nevertheless, Norman constitutes binding precedent, and the Court is obliged to follow it.

reduce a defendant's sentence once the defendant shows that new statutory or case law would have benefitted the defendant, if such law had existed at the time of the defendant's sentencing." United States v. Spencer, 521 F. Supp. 3d 606, 610 (E.D. Va.), aff'd, 853 F. App'x 833 (4th Cir. 2021). Rather, the Court must decide whether a reduction in sentence is warranted "based on a 'full consideration of the Defendant's individual circumstances.'" Id. (quoting McCoy, 981 F.3d at 286). Such circumstances include the length of time already served, any rehabilitative efforts made while incarcerated, the defendant's prior criminal history, and the defendant's age at the time of the offense. McCoy, 981 F.3d at 286.

Here, considering McBride's arguments regarding his career offender status and his health conditions, along with the sentencing factors in 18 U.S.C. § 3553(a), the Court concludes that McBride has failed to show extraordinary and compelling reasons for a compassionate release. McBride's offense conduct was serious, involving the distribution of a prodigious amount of cocaine—at least 70 kilograms—within the relatively small communities of western North Carolina. Even without the career offender enhancement, McBride's responsibility for 70 kilograms of cocaine would still subject him to a statutory range of between twenty years and life imprisonment. Moreover, removing the career offender enhancement,

11

McBride's advisory Guidelines range would be 240 to 293 months (offense level of 34 and a criminal history category of V).[5] Currently, McBride has approximately 256 months of credited time, which is well within this advisory range. At the time that he engaged in subject conspiracy, McBride was in his early 30s and had already accrued a significant criminal history, including convictions for felonious possession of controlled substances, involuntary manslaughter, discharge of a firearm with gross negligence, possessing a firearm as a convicted felon, and receiving stolen property. [Doc. 104 at ¶¶ 28-32]. Additionally, while McBride's efforts at rehabilitation while incarcerated have been solid, such efforts are not so exceptional to warrant the extraordinary relief of compassionate release.

In light of the serious nature of McBride's offense and his criminal history, the Court finds that the relevant § 3553(a) sentencing factors, including the need for the sentence to reflect the true extent and seriousness of McBride's offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence, and to protect the public from further crimes, counsel against McBride's compassionate release.

---

[5] Since the Defendant would remain a career offender in all but the technical sense, the facts of this case would likely warrant an upward variance if sentenced today.

In sum, the Court finds that there are no "extraordinary and compelling reasons" for McBride's release and that analysis of the relevant § 3553(a) factors continue to weigh in favor of his continued incarceration. Accordingly, the Defendant's Motion for Compassionate Release is denied.

B. **Motion to Seal**

The Government moves the Court for leave to file under permanent seal its Response to the Defendant's Motion for Compassionate Release, as well as the supporting exhibits. [Doc. 225].

Before sealing a court document, the Court must "(1) provide public notice of the request to seal and allow interested parties a reasonable opportunity to object, (2) consider less drastic alternatives to sealing the documents, and (3) provide specific reasons and factual findings supporting its decision to seal the documents and for rejecting the alternatives." Ashcraft v. Conoco, Inc., 218 F.3d 288, 302 (4th Cir. 2000). In the present case, the public has been provided with adequate notice and an opportunity to object to the Government's motion. The Government filed its motion on August 24, 2021, and such motion has been accessible to the public through the Court's electronic case filing system since that time. Further, the Government has demonstrated that the medical records submitted in support of the Government's Response [Docs. 223-4, 223-5] contain sensitive

13

information concerning the Defendant and that the public's right of access to such information is substantially outweighed by the Defendant's competing interest in protecting the details of such information. See United States v. Harris, 890 F.3d 480, 492 (4th Cir. 2018). Finally, having considered less drastic alternatives to sealing the documents, the Court concludes that sealing of these medical records is necessary to protect the Defendant's privacy interests.

The Court, however, will deny the Government's motion to seal with respect to its Response brief and the other supporting exhibits. The Government moves to seal its entire Response and supporting exhibits because the Response refers to information contained in the Defendant's medical records. While the Response does mention the Defendant's health conditions, the Defendant has moved for compassionate release based on his assertion that these health conditions warrant the extraordinary relief that he requests. Generally, the more central a piece of information is to the relief a defendant seeks, the greater the public's right to know that information and the less the defendant's right to have such information sealed. See United States v. Harris, 890 F.3d 480, 491-92 (4th Cir. 2018). Here, the Defendant's medical conditions are *central* to the Defendant's request for relief. Thus, while the underlying medical records will be sealed, the Government's

Response, which generally references the Defendant's health conditions, will be unsealed and filed on the public docket.

As for the other supporting exhibits [Docs. 223-1, 223-2, 223-2], these exhibits are not medical records. They pertain to his disciplinary history and education and work history [Doc. 223-1], his administrative request for compassionate release [Doc. 223-2], and the Warden's response to that administrative request [Doc. 223-2]. Such documents do not implicate the Defendant's privacy interests, and any such privacy interest that do exist in such records is outweighed by the public's interest in knowing the basis for his compassionate release request.

For these reasons, the Government's Motion to Seal will be granted in part and denied in part.

**IT IS, THEREFORE, ORDERED** that the Defendant's Motion for Sentence Reduction under 18 U.S.C. § 3582(c)(1)(A) (Compassionate Release) [Doc. 218] is **DENIED**.

**IT IS FURTHER ORDERED** that the Government's Motion to Seal [Doc. 225] is **GRANTED IN PART**, and the medical records submitted in support of the Government's Response [Docs. 223-4, 223-5] shall be filed under seal and shall remain under seal until further Order of the Court. The Motion is **DENIED** with respect to the sealing of the Government's Response

15

brief and Exhibits 1, 2, and 3 [Docs. 223, 223-1, 223-2, and 223-3]. The Clerk of Court is respectfully instructed to unseal these documents and refile them on the public docket.

**IT IS SO ORDERED.**

Signed: October 28, 2021

Martin Reidinger
Chief United States District Judge